## SAMUEL KITSON

*v.*

## JOHN V. FARWELL *et al.*

*Filed at Ottawa March 29, 1890.*

1. INSOLVENT DEBTORS—*discharge from imprisonment—jurisdiction
of county court.* By the Insolvent Debtors' act, the county court is given
exclusive original jurisdiction in all applications for discharge from
imprisonment under the provisions of that act, and that court is required to be always open to hear such applications, and to hear them
without delay.

2. SAME—*right to a discharge—who may object—whether the right
exists.* On the application of a debtor to be discharged from arrest for
debt, any person interested may appear and object to the discharge, or
to the debtor's right to schedule; but the presumption being in favor of
the liberty of the citizen, the statute contemplates the discharge of the
debtor upon the surrender of his property, unless it appears that the
writ issued in a case where he is not entitled by law to be discharged.

3. SAME—*imprisonment for debt—when allowable—policy of the law.*
The policy of our law is opposed to imprisonment for debt, and no person within this State can be so imprisoned, except upon refusal to surrender his estate for the benefit of his creditors, as prescribed by law,
or in cases where there is a strong presumption of fraud.

4. SAME—*"malice"—meaning of the word—as used in the Insolvent
Debtors' act.* The term "malice," in section 2 of the Insolvent Debtors'
act, is not to be considered in the sense of hatred or ill-will, but of
*malus animus,* and as denoting that the party is actuated by improper
or dishonest motives. It implies a wrong inflicted on another with an
evil intent, design or purpose. The wrong and the intention to commit
the injury are necessary to deprive the party of the right to a discharge
from arrest or imprisonment.

5. Same—*malice as "the gist of the action"—what is the "gist" of an action.* The gist of an action is defined to be the cause for which the action will lie—the ground or foundation of a suit—and without which it would not be maintainable; the essential ground or object of a suit, without which it is not a cause of action.

6. Same—*application for discharge—of its form.* It was objected to a petition of a debtor to be discharged from arrest or imprisonment under a *ca. sa.* under the Insolvent Debtors' act by surrendering his property, that it was insufficient, for the reason it was not alleged therein that the writ under which the arrest was made was not issued in a "civil action, when malice is not the gist of the action:" *Held,* that the objection was without merit, as the proceedings in the county court are summary, and without formal pleadings. It is enough that the debtor offers to surrender his property and asks to be discharged.

7. Sales—*fraud on the part of the buyer—in what it may consist—so as to give the seller an action for fraud and deceit—or the right of rescission.* A promise to perform an act, or to pay for goods when the price is due, though accompanied with an intention not to perform, is not such a fraudulent representation as can be made the basis of an action at law for deceit. Such promises are not false when made.

8. It is not an actionable fraud for a purchaser to buy goods when he is insolvent, knowing that to be his condition, and failing to disclose that fact to the vendor, or that he purchases without any reasonable expectation that he can ever pay for the goods.

9. A count in a declaration for obtaining goods by fraud and deceit, alleged that the defendant applied to the plaintiff to sell and deliver to him goods on credit, and, to induce the plaintiff to sell and deliver such goods on credit, represented that he intended to pay therefor at the end of the time of the credit agreed on, and that, relying on such statements and pretensions of the defendant, and believing that he intended to pay therefor, the plaintiff sold and delivered to him goods, etc., which had not been paid for, and that the said representations were false and fraudulent, and intended not to be fulfilled; that during the whole period of the purchase the defendant was wholly insolvent and unable to pay for said goods, and knew the same, and obtained said goods with the fraudulent intention of not paying for them, and of cheating and defrauding the plaintiff out of the same : *Held,* that the count did not show a cause of action for deceit.

10. In order to hold the purchaser of goods liable in an action on the case for fraud and deceit, he must have been guilty of making false representations of fact, or practicing some artifice or deception ; and when such false representations are the basis of the action, they must relate to some past or existing fact.

11. The weight of authority is, that where property is obtained from another with a preconceived design on the part of the purchaser not to

pay for it, but to defraud the vendor out of the same, the vendor, on discovery of the fraud, may avoid the contract of sale and retake the· property while still in the hands of the vendee. But this rule should not be extended beyond the requirements established by the adjudi-- cated cases.

12. PLEADING—*"matter in issue"—in what it consists.* By the words· "matter in issue," is to be understood that matter upon which the plaintiff proceeds by his action, and which the defendant denies by his pleadings. If the declaration on its face shows the special matter set up and relied on by the plaintiff, and the same is denied by the defendant's plea, it will show the matter in issue.

13. FORMER ADJUDICATION—*of what matters a judgment is conclusive·* *—as to "matters in issue."* A judgment of a court of competent jurisdiction is conclusive as to every matter directly and properly at issue· in a suit upon the same matters between the same parties, coming incidentally in question in another court for a different purpose, but is not evidence of any matter which may come collaterally in question, though within the jurisdiction of the court, nor of any matter incidentally· cognizable, nor of any matter to be inferred by argument from the judgment.

14. A judgment necessarily follows the nature of the right claimed· in the declaration, or the injury complained of, and, generally speaking, can conclude nothing beyond such right or injury. It is not evidence of any matter only inferable therefrom by argument, and which probably did constitute, but might or might not have constituted, the· true ground of recovery.

15. SAME—*in case of several counts.* Where a declaration contains· several counts, the first of which shows a good cause of action in case for deceit, growing out of false representations, and the others show only a breach of promise to pay for goods bought, a judgment on a· general verdict in favor of the plaintiff is not conclusive evidence of· fraudulent representations or fraud and deceit by the defendant to· gain possession of the goods, as the finding may have been upon the· two last counts, and the defendant, on an application for a discharge from arrest under the judgment, is not estopped from showing he was guilty of no fraud.

16. On motion in arrest of judgment, or upon error, the judgment will be given or sustained if there is any good count in the declaration ;· but the rule is different where the judgment is offered for the purpose· of estopping the defendant from averring and proving a matter alleged only in one of the counts. In such case, it can not be certainly said that the general verdict would have been rendered if the other counts. had not been in.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. A. N. WATERMAN, Judge, presiding.

John V. Farwell and his co-partner brought suit in the Superior Court of Cook county, against Samuel Kitson, and filed their declaration, in substance, as follows : That on September 19, 1885, the defendant, desiring to obtain goods of the plaintiffs on credit, applied to plaintiffs for that purpose, and to induce the plaintiffs to believe that he was solvent and worthy of credit, and to induce plaintiffs to sell and deliver goods to him on credit, represented to the plaintiffs to have a cash capital of $12,000, that he was solvent and worthy of credit; that relying on such representations, and believing them to be true, plaintiffs sold and delivered to the defendant, upon credit, goods of the value of $8000, for which the defendant failed to pay; that the representations of the defendant aforesaid were false, and known to be false by the defendant, and were made with the intention to deceive and defraud the plaintiffs ; that the defendant had no capital or property whatever; that he was indebted to his wife upwards of $13,000, for which she held his judgment note, then past due; that he was largely indebted to other persons, and was insolvent and unworthy of credit,—all of which facts the defendant knew and fraudulently concealed from plaintiffs, and that said false statements and representations were made by the defendant to deceive plaintiffs and cheat them out of their goods.

In the second count it is averred, that on, etc., the defendant applied to the plaintiffs to purchase of them goods on credit, and to induce plaintiffs to sell and deliver to him such goods, represented that he desired to purchase the same, and, at the expiration of the credit, intended to pay the reasonable value thereof; that plaintiffs relied on such representations of the defendant, and, believing he intended to purchase the goods and pay for them, sold and delivered to him, on credit,

goods of the value of $8000, and which the defendant had not paid for; that the representations and pretensions of defendant, as aforesaid, were false and fraudulent, and intended not to be fulfilled; that during the time, etc., the defendant was insolvent and unable to pay for said goods, which fact he well knew, and that he obtained the goods with the fraudulent intent of not paying for them, and of cheating and defrauding plaintiffs out of same.

And the third count was: "And, also, for that said defendant, heretofore, on the 19th day of September, 1885, and at divers times thereafter, in said county, for the purpose and with the intention of cheating and defrauding said plaintiffs, applied to them to sell and deliver to him certain goods on credit, pretending that he wished to purchase the same, and that he would pay said plaintiffs the reasonable value thereof. And thereupon said plaintiffs, believing that said defendant honestly intended to purchase said goods and to pay therefor, sold and delivered to said defendant, on credit, certain other goods, of the value of $8000. And said plaintiffs aver that said goods have not been paid for, and that said defendant intended, at the time the same were purchased, not to pay therefor, but to cheat and defraud said plaintiffs out of the same, and that his pretended purchase of said goods was merely a fraudulent pretense and scheme to obtain the same from said plaintiffs without paying therefor."

Plea of the general issue; trial; verdict of jury, finding the defendant guilty and assessing the plaintiffs' damages; judgment on verdict for $5882.54, upon which judgment there issued an execution against the body of the defendant, under which the defendant was arrested and held in custody by the sheriff of Cook county. The defendant petitioned the county court of Cook county to be discharged from imprisonment under the Insolvent Debtors' act, by delivering up his property, etc., and after reciting that he had been arrested under a *capias ad satisfaciendum* issued out of the Superior Court of Cook

county, in favor of the plaintiffs in the foregoing suit, stated that he was then in the custody of the sheriff of said county, under and by virtue of the writ aforesaid, and that he was desirous of releasing his body from such arrest or imprisonment by delivering up his property, and asking such proceedings to that end as are prescribed or required by the law relating to insolvent debtors. The creditors answered, setting up that the *ca. sa.* under which Kitson was arrested, etc., "was issued upon the judgment of the Superior Court of Cook county, in favor of these defendants, and against said petitioner, rendered in a suit in which malice on the part of the petitioner was the gist of the action." Wherefore, they say the petitioner is not entitled to be discharged from arrest, and pray that the petition be dismissed.

Upon hearing, the county court found that malice was the gist of the action in which the *ca. sa.* issued, and dismissed the petition. Appeal was prayed and perfected to the circuit court of Cook county, in conformity with the 26th section of the Insolvent Debtors' act. In the circuit court a jury was impaneled, and the petitioner offered evidence tending to show that the original suit in which the judgment on which the said *ca. sa.* was issued, was for a debt contracted *bona fide*, and not for any cause of action where malice was the gist thereof. Thereupon the respondents offered in evidence the said judgment and the files, including the declaration, etc., in said original case, and the court, holding that the cause of action set up in said declaration, and of which the defendant in said cause had been found guilty, was for a cause of action in which malice was the gist of the action, refused to hear further proof as to what the cause of action there was, and instructed the jury to find against petitioner, and, upon their so finding under said direction, entered an order affirming the judgment of the county court dismissing the petition and remanding the petitioner to custody. On appeal to the Appellate Court this

judgment was affirmed, and the petitioning debtor prosecutes this further appeal.

Messrs. BISBEE, AHRENS & DECKER, for the appellant:

Under the pleadings, the appellant was not bound affirmatively to show the record of the cause in which the *ca. sa.* was issued. The only question was whether malice was the gist of the action.

It was incompetent for the arresting creditors, against objection, to put in evidence a record in a cause without any parol evidence identifying the record or the papers in the case as the one in which the *ca. sa.* was issued. *Perkins* v. *Walker,* 19 Vt. 144; *Gardner* v. *Buckbee,* 3 Cow. 121; *Bart* v. *Sternberg,* 4 id. 539; *United States* v. *Lane,* 8 Wall. 185.

A party can not avail of an estoppel without setting it up in his pleadings. *Voght* v. *Winch,* 2 Barn. & Ald. 662; *Duchess of Kingston's case,* 2 Smith's L. C. (Am. ed.); *Goddard's case,* 2 Coke, 4.

As to what is malice, see *Mahler* v. *Sinsheimer,* 20 Bradw. 401; *Bank* v. *Burkett,* 101 Ill. 391; *In re Murphy,* 109 id. 31; *Ayers* v. *French,* 41 Conn. 141.

Mere intention not to pay for goods bought is not an actionable fraud. *Cross* v. *Peters,* 1 Greenlf. 386; *Smith* v. *Smith,* 21 Pa. St. 367; *Rodman* v. *Talheimer,* 75 id. 232; *Bell* v. *Ellis,* 33 Cal. 620.

No recovery can be had in an action for deceit unless a false representation has been made knowingly, with intent to deceive, or some other artifice or deception is practiced. *Henshaw* v. *Bryant,* 4 Scam. 97; *Schwabacker* v. *Riddle,* 99 Ill. 343; *Gage* v. *Lewis,* 68 id. 604; *People* v. *Healy,* 128 id. 14.

The judgment did not estop appellant from showing there was no fraud in his purchase.

Messrs. TENNEY, HAWLEY & COFFEEN, for the appellees:

The debtor is not entitled to discharge from arrest when malice is the gist of the action.   Rev. Stat. chap. 72, sec. 2; *Mahler* v. *Sinsheimer*, 20 Bradw. 401.

The burden of proof was upon appellant to show that malice was not the gist of the action.   *Mahler* v. *Sinsheimer, supra.*

The evidence offered by appellant was inadmissible, for the reason that it contradicted the record.   *Harmon* v. *Auditor*, 123 Ill. 122.

In actions of this character, where false representations are made, it is not sufficient for the plaintiff to prove their falsity. He must aver and prove the *scienter,* —must show malice. *Grier* v. *Puterbaugh*, 108 Ill. 602; *Schwabacker* v. *Riddle*, 99 id. 343; *Swaim* v. *Humphreys*, 15 Bradw. 451.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

It is insisted by appellees, that the petition of the debtor to the county court is insufficient to warrant his discharge, for the reason that it is not alleged therein that the writ under which the arrest was made was not issued in a "civil action where malice is not the gist of the action."   The objection is without merit.   The proceedings before the county court under the Insolvent Debtors' act are summary, and without formal pleading.    The requirement of the statute is, simply, that notice of the application must be given.   The policy of our law is opposed to imprisonment for debt, and no person within this State can be so imprisoned unless upon refusal to surrender his estate for the benefit of his creditors, as prescribed by law, or in cases where there is a strong presumption of fraud. (Const. sec. 12, art. 2.)   By the Insolvent Debtors' act the county court is given exclusive original jurisdiction in all applications for discharge from imprisonment under the provisions of that act.   Undoubtedly, any persons interested may appear and object to the discharge of the debtor, or to his right to schedule; but the presumption being in favor of the liberty

of the citizen, the statute contemplates the discharge of the debtor upon the surrender of his property, unless it shall appear that the writ has issued in a case where the debtor is not by law entitled to be discharged. And it is also contemplated that the proceedings shall be without delay, and that the court shall at all times be open to hear such applications. We think it clear that the proceeding is summary, and no formal pleadings required. It is enough that the imprisoned debtor offers to surrender his property and asks to be discharged. Upon appeal to the circuit court that court is required to hear the cause at the term to which the appeal is taken, unless for good cause shown, and upon affirmance of the judgment of the county court, in whole or in part, "give such direction to the county court in the premises, as shall be according to equity and justice."

The principal question, however, arising upon this record is, whether the circuit court erred in the exclusion of evidence offered by the petitioning debtor, and in directing the jury impaneled in said cause to find against the petitioner, and in rendering judgment affirming the order of the county court dismissing the petition.

The judgment creditors filed an answer, setting up that the judgment upon which the writ issued, was rendered in a suit in which malice on the part of the petitioner was the gist of the action. On the hearing in the circuit court, the petitioner offered evidence tending to disprove this allegation. The respondents introduced in evidence what, for the purposes of this case, may be treated as the files and records of said original cause, and the court held that the petitioner was concluded by such record, and refused to permit the introduction of the offered testimony. It will be unnecessary for us to discuss or determine whether, in a proper case, where the defendant has been adjudged guilty of the wrong alleged in the declaration, the doctrine of *res judicata* will apply in applications for discharge under this statute. Conceding the rule to its utmost, we are of opinion that it can have no application to this case.

The declaration offered in evidence contained three counts, to which the plea of the general issue was filed, and on the trial of the issue thus made a general verdict was rendered finding the defendant guilty and assessing the plaintiffs' damages.

If it be conceded, which may be done for the purposes of this case, that the first count of the declaration states a good cause of action in case, as for deceit, it can not be said, under the rulings of this court, that the second and third counts present a good cause of action. The *gravamen* of the first count is, that the defendant, in the purchase of the goods mentioned, made false and fraudulent representations as to his financial standing and the value of his assets; that such false and fraudulent representations were made with intent to deceive and defraud the plaintiffs, and induce them to sell the defendant goods on credit, and in reliance thereon the plaintiffs did sell, etc. The second count of the declaration alleges, that the defendant applied to the plaintiffs to sell and deliver to him goods on credit, and to induce the plaintiffs to sell and deliver such goods on credit, represented that he intended to pay therefor at the end of the time of credit agreed upon; that, relying upon such statements and pretensions of the defendant, and believing that he intended to pay therefor, the plaintiffs sold and delivered to him goods, etc., which have not been paid for, and that the "aforesaid representations were false and fraudulent, and intended not to be fulfilled;" that during the whole period of the purchase the defendant was wholly insolvent and unable to pay for said goods, and knew the same, and obtained the said goods with the fraudulent intention of not paying therefor, and of cheating and defrauding the plaintiffs out of the same.

The most casual comparison of this count of the declaration and of the third count set out in the preceding statement, with the declaration in the case of *People ex rel.* v. *Healy*, 128 Ill. 14, will show that no sufficient cause of action is set out in said counts to enable the plaintiffs to maintain an action for

deceit. It was there said, quoting from *Gage* v. *Lewis*, 68 Ill. 604: "It can not be said that these representations and promises were false when made, for until the proper time arrived, and the defendant refused to comply with them, it could not be positively known that they would not be performed. Even if, at the time they were made, it was not intended to comply with them, it was but an unexecuted intention, which has never been held, of itself, to constitute a fraud." And again: "A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law." And it was there held, and from which we see no occasion to recede, that in order to hold the purchaser of goods liable, in an action on the case, for fraud and deceit, he must have been guilty of making false representations of fact, or practicing some artifice or deception; and where such false representations are the basis of the action, they must relate to some past or existing fact. See *Galligher* v. *Brunell*, 6 Cow. 350; Kerr on Fraud and Mistake, 88.

The weight of authority probably is, that where property is obtained from another with a preconceived design on the part of the purchaser not to pay therefor, but to obtain the property and keep and defraud the vendor out of the same, upon the discovery of the fraud the vendor may avoid this contract of sale, and retake the property while still in the hands of the vendee. But in our judgment, the rule should not be extended beyond the requirements established by the adjudicated cases. The only representation here alleged to have been made is, that the defendant desired to purchase on credit, and that he would pay for the goods at the expiration of the credit agreed upon. There is no allegation in the counts under consideration that he made any representation of fact; past or existing. It has never been held, so far as we are advised, that it will constitute actionable fraud for a purchaser to buy when he is insolvent, knowing that to be his condition, and failing to disclose that

22—132 ILL.

fact to the·vendor, or that he purchases without any reasonable expectation that he can ever pay therefor. A contrary rule has been announced in many cases. *Blow* v. *Gage,* 44 Ill. 208; *People ex rel.* v. *Healy, supra,* and authorities cited.

We do not deem it necessary to enter upon an examination of the various cases cited by counsel and to be found in the books. It is manifest that no such fraud is set up in the second and third counts of the declaration, introduced in evidence, as would have entitled the plaintiffs to recover for fraud and deceit. There is no pretense or allegation of attempted rescission of the contract, nor is there any allegation that the time of credit had expired. For aught that appears, the defendant may be ready and willing to pay at the time when it was agreed he should pay. Moreover, if it be conceded that the debt was past due, then, under the facts alleged in these counts of the declaration, the suit should have been brought upon the promise.

The precise question here presented is, whether the judgment, when offered in evidence, was conclusive, under the doctrine of *res judicata,* so that the petitioner was estopped from showing that when he purchased the goods mentioned in the declaration in that case, he bought them in good faith, intending to pay for them, and not with any fraudulent intent, and that therefore malice was not the gist of the plaintiffs' right of recovery against him in that action. The gist of an action is defined to be, the cause for which an action will lie; the ground or foundation of a suit, and without which it would not be maintainable; the essential ground or object of a suit, without which it is not a cause of action. The term "malice," as used in the statute under consideration, is not to be considered in the sense of hatred or ill-will, but of *malus animus,* and as denoting that the party is actuated by improper or dishonest motives. (*Mitchell* v. *Jenkins,* 5 B. & A. 594.) It implies a wrong inflicted on another, with an evil intent, design or purpose. In *First National Bank* v. *Burkett,* 101 Ill. 391,

the court, in speaking of malice, as used in this statute, said:
"It requires the intentional perpetration of an injury or wrong
on another. The wrong and the intention to commit the in-
jury are necessary to deprive the party of the right to a dis-
charge from arrest or imprisonment."

The former judgment, when introduced in evidence, was
conclusive as to every matter directly and properly at issue in
that suit; and if the question of whether the petitioner, by
false and fraudulent representations, or by fraud practiced and
perpetrated upon the plaintiffs in that suit, obtained the goods,
etc., was necessarily in issue, the doctrine of *res judicata* might
be held to apply. The cases are substantially agreed as to the
rule, but the difficulty arises in its application, in determining
what is to be understood by the "matters in issue" upon the
former trial, and what is meant by a judgment directly upon
the same matter. (See 1 Starkie on Evidence, 190.) The
*Duchess of Kingston's case,* 11 State Trials, 261, furnishes the
rule, as follows: "From the variety of cases relative to judg-
ments being given in evidence in civil suits, these two deduc-
tions seem to follow as generally true: First, that the judgment
of a court of concurrent jurisdiction directly upon the point is,
as a plea, a bar; or, as evidence, conclusive between the same
parties upon the same matter directly in question in another
court. Second, that the judgment of a court of exclusive juris-
diction directly upon the point is, in like manner, conclusive
upon the same matter between the same parties, coming in-
cidentally in question in another court for a different purpose.
But neither the judgment of a concurrent nor exclusive juris-
diction is evidence of any matter which came collaterally in
question, though within their jurisdiction, nor of any matter
incidentally cognizable, nor of any matter to be inferred by
argument from the judgment." (1 Phillips on Evidence, 321;
Greenleaf on Evidence, 565.) It may be stated, generally,
that by "matter in issue" is to be understood that matter upon
which the plaintiff proceeds by his action, and which the de-

fendant denies or controverts by his pleadings. And if the declaration, on its face, shows the special matter set up and relied upon by the plaintiffs, and the same is denied by the defendant's plea, it will show the "matter in issue." The judgment necessarily follows the nature of the right claimed in the declaration, or the injury complained of, and, generally speaking, can conclude nothing beyond such right or injury. As we have seen, the judgment is not evidence of any matter which is only to be inferred therefrom by argument, and which probably did, but might or might not, constitute the true ground of recovery. If the rule were otherwise, it would operate harshly and unjustly; for to admit a presumption that a fact is established by the judgment, and not allow that assumption to be rebutted by proof that it is without foundation, would be to reverse the rule applicable to all presumptions of fact. The authorities are, therefore, that a judgment is conclusive only of what it necessarily and directly decides.

It is manifest, that it by no means follows that by the judgment in this case the defendant therein was found guilty of having made any false representations, or of having practiced any deceit, or resorted to any artifice, to obtain possession of the goods in the declaration mentioned, for which an action on the case, as for deceit, would lie. Nor does it militate against this conclusion that the judgment, if rendered under the second and third counts, would be upon an immaterial issue. For some purposes the judgment would be referable to the good count in the declaration, as, upon motion in arrest, or upon error; but where the doctrine of *res judicata* is sought to be applied, it must conclusively appear that the matter was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar. It may also be that the matters set up in the second and third counts of the declaration, by means of which it is alleged the petitioner obtained the credit, were in a sense immoral; but as we have already seen, they formed no proper basis for a recovery in the action

in which the judgment was obtained. It may also be true, that if the first count had not been in the declaration, the judgment might, on motion, have been arrested,—that it may have been the duty of the defendant to have demurred, as suggested by counsel, and of the court to have sustained the same, to said second and third counts; but that consideration can not affect the question being considered. It is apparent that the jury may just as well have found for the plaintiffs in that action, upon evidence tending to support the second and third counts, only, which would form no basis for or right of recovery for fraud or injury committed by the petitioner in that action, as upon the first count. The finding of the jury, we may argue, was predicated upon the allegation of the first count of the declaration; but it is manifest, under the rule, that will not suffice. If predicated upon the second and third counts of the declaration, alone, it was by no means such as would have authorized a recovery in the suit where malice is the gist of the action.

But it is said that no motion in arrest was entered by the defendant because of the defect in the declaration. Manifestly, such motion would have been unavailing had it been entered while the first count remained.

It follows, that we are of opinion that this judgment, under the pleadings, was not necessarily conclusive of the question as to whether malice was the gist of the action. Independently of the question of whether the record of the Superior Court of Cook county was receivable in evidence in the circuit court without proof of its identity and genuineness, we are of opinion that the court erred in excluding the offered evidence, and directing a verdict against the petitioner.

The judgments of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting.