## STEVENS G. RUSSELL

### V.

## THE CHICAGO TRUST AND SAVINGS BANK.

*Creditor's Bills — Insolvency— Fraud—Collusion—Priority—Practice.*

1. The filing of the first creditor's bill in a given case gives to the creditor so filing a right to priority in payment, and the creditor who next files his bill is entitled to the second lien.

2. A court may appoint a receiver prior to the service of process upon the defendant to the creditor's bill, such appointment being dependent upon the defendant, being at some time brought into the suit by appearance or service of process.

3. A person becoming a party to a given litigation, after the institution thereof, should, upon becoming such party, move to discharge the receiver therein, if he desires to complain of his appointment.

4.  Where an insolvent acquiesces in the appointment of a receiver, and makes no denial of the allegations of the creditor's bill asking therefor, the insufficiency of the affidavit to the bill cuts no figure.

5.  The filing of an answer denying liability and a cross-bill asking for relief by a creditor of an insolvent, two suits against the latter having been previously brought by other creditors and consolidated, one of the latter having been permitted to file a supplemental bill making the former a party, amounts to an estoppel of the right to complain of the order of consolidation.

[Opinion filed April 8, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. J. S. McCLURE and T. J. SUTHERLAND, for appellant.

Messrs. FULLER & FYFFE, for appellee.

WATERMAN, J.   July 26, 1886, a bill was filed by James O. Walker, setting forth that on that day he had obtained judgment against Almon D. Ellis for $2,241.13; that execution had been issued thereon and returned no property found. The bill contained the usual allegations and prayer of a creditor's bill, and upon it a receiver of the estate and effects of said Ellis was at once appointed.

July 31, 1886, The Chicago Trust & Savings Bank filed its bill, setting up the obtaining by it of a judgment against said Ellis, the issue of execution thereon, and return of the same no property found; also alleging that the said judgment obtained by Walker and the creditor's bill filed by him was by collusion with said Ellis, and that the same were in fraud of the rights of the said bank.

Walker and Ellis were made parties defendant to this bill, and it contained the ordinary allegations of the creditor's bill; also prayed for the appointment of a receiver for the estate and effects of said Ellis.

September 30, 1886, the appearance of Almon D. Ellis in the suit of Walker against him was filed.

October 2, 1886, Almon D. Ellis appeared in the suit of

The Chicago Trust & Savings Bank against him, and the suit against him was consolidated with that against him and Walker.

Joseph L. Wilson was upon the same day appointed receiver in the suit of the bank. January 24, 1887, leave was granted to Walker to file a supplemental bill and make appellant a party thereto.

January 25, 1887, appellant answered the supplemental bill setting up the recovery by him of a judgment against said Ellis for $2,013.94, the issue of execution thereon and return of the same, no property found, and claiming that he is entitled to share with said Walker in the estate of said Ellis. Appellant insists that the court had no power to order the consolidation of these two causes, and that its order to that effect was void.

If appellant had at that time been a party to the litigation, he could have objected to the consolidation, and perhaps if he had then been a party, the consolidation would not have been made. The order seems to have been made by acquiescence of all parties. At least none of those who were then parties object to it. It is true that the two suits were antagonistic, but so are the ordinary bill and cross-bill. Certainly at the time this order was made, no error prejudicial to appellant was made, for appellant was not then a party to either cause.

On the 25th day of January, 1887, nearly four months after the consolidation order was entered, appellant for the first time became a party to the then consolidated cause. When he was at this time brought in, he had then a right and an opportunity to object to any proceeding in such cause against him, because the suit as it then existed was multifarious; or for any other reason had he done so, perhaps no further proceedings against him would have been had, and he would have been dropped out of the cause; but instead of making objection to being involved in the litigation, he answered, setting up the recovery of a judgment by him against said Ellis, claiming a right to share with Walker in the assets of Ellis, and denying Walker's right to any relief in the premises as against him,

appellant; and three days thereafter filed his cross-bill, praying for relief. It is now too late for him to complain of the order of consolidation.

It is insisted that after the appointment of a receiver under the Walker bill, Walker having thus obtained a priority, all other creditors were on an equal footing and no one could obtain an advantage over another.

In Storm v. Waddell, 2 Sandf. Ch. 494, the court on page 513 say: "If there are several creditor's suits, each claimant is paid according to his priority, as ascertained by the time of the filing of the respective bills and serving the process to answer."

In Corning v. White, 2 Paige Ch. 567, it is said that the filing of a creditor's bill gives to the vigilant creditor a right to priority in payment, "and the creditor who next files his bill will have the second lien." This language is quoted approvingly in Young v. Clapp, 40 Ill. App. 313.

In Burrell v. Leslie, 6 Paige Ch. 445, a number of creditors' bills had been filed, and it was ordered that the several decrees be paid according to the times in which the bills were filed. This action was approved in Storm v. Waddell, *supra*, the court saying: "This case, with Corning v. White, shows that the lien obtained by these bills is not a mere form of words or operative only against the debtor.. As between the creditors, it overrules the equitable principle of equality in thus rewarding superior vigilance." In Safford v. Douglas, 4 Ed. Ch. 538, the rule announced in Corning v. White was approved and followed. We do not regard the case of Jackson v. Lahee, 114 Ill. 287, or Gage v. Smith, 79 Ill. 223, as announcing any rule inconsistent with the doctrine of the New York cases. There was no error in the appointment of Wilson as receiver in the suit of the Chicago Savings Bank.

A court may appoint a receiver prior to the service of process upon the defendant to the creditor's bill. Of course such appointment is dependent upon the defendant being at some time brought into the suit by appearance or service of process.

This appointment was made prior to appellant becoming

a party to the litigation.    When he was brought in he should have moved to discharge the receiver if he desired to complain of it.    Whether the service obtained upon Ellis in the suit of the Savings Bank was sufficient, is immaterial, as he entered his appearance in that cause and thereby the court acquired personal jurisdiction over him.

It is true that the affidavit to the bill in the case of the Savings Bank was insufficient, and if Ellis had, when he appeared, denied under oath the allegations of the bill and moved to discharge the receiver, unless a sufficient verification had been made, the court doubtless would have set aside the order appointing the receiver; but Ellis, the defendant, did nothing of the kind.    He acquiesced in the appointment of the receiver; he made no denial of the allegations of the bill, and therefore whether it was verified at all became of no consequence.

A question which appellant is in a position to contest is the order awarding priorities; that portion of the decree we believe to be in accordance with the well-established rule. The decree of the court below is therefore affirmed.

*Decree affirmed.*